E-FILED
Tuesday, 02 November, 2021  10:16:35 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **THOMAS BRITTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **No.: 21-cv-1032-JBM** |
| | ) | |
| **WARDEN MELVIN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MERIT REVIEW – AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files an amended complaint under 42 U.S.C. § 1983, alleging inhumane conditions of confinement at the Pontiac Correctional Center ("Pontiac"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the amended complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011), quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## MATERIAL FACTS

Plaintiff alleges that in August 2016 he was placed in a segregation cell that was infested with mice, bugs, roaches, and leeches. In September 2016, he was placed in a cell which had black mold. Plaintiff complained of this to Defendant Warden Melvin and Defendant Blackard and also complained of a "black soot-like substance" in the water which continues to the present

day. Plaintiff notes that Defendant Melvin left Pontiac in 2017 or 2018 and was replaced by Defendant Warden Kennedy.

On an unidentified date, Plaintiff personally complained of these conditions to Defendant Kennedy and wrote numerous grievances which Defendant Kennedy denied as being emergencies. On unidentified dates, Plaintiff spoke with Defendants Shelton and Prentice regarding black mold, rodent, and insect infestation and "overall conditions" in his cell. On another unidentified date, he asked Defendant Brown to move him to a different cell due to these conditions and the request was denied by "Pontiac command staff." Plaintiff submitted 14 related grievances from January 1, 2019 through September 14, 2020 and nothing was done. Plaintiff pleads that "Pontiac staff" does not provide him adequate cleaning supplies with which to remove the black mold.

On an unidentified date, Plaintiff notified Defendant's Gargan, McDowell and Quendo that he could feel an insect moving inside his ear. Defendants did not believe that the case represented an emergency, and Plaintiff had to wait 24 hours until seen on July 14, 2020. At that time, an insect was flushed out of his ear, allegedly resulting in significant hearing loss.

On an unidentified date, Plaintiff was seen in healthcare for a sore throat, breathing difficulty and the vomiting of blood. He was prescribed antibiotics which did not work, and returned to his cell.

In October 2020, Plaintiff spoke with the current Warden, Leonta Jackson, complaining of "health issues" which he had developed due to the complained-of conditions. Defendant Jackson assured him that the water was potable as "there is a filter in place." Defendant Jackson agreed to address the mold in Plaintiff's cell, but this was not done.

Plaintiff was housed in segregation cell #322 on dates he cannot recall, and complained to Defendant Lionhart of mold, roaches, and toilet leaks. Plaintiff requested cleaning supplies and transfer to a different cell, okay all which was refused by Defendant Lionhart.

Plaintiff claims that he underwent surgery on March 13, 2019 or March 14, 2019 and was placed back in cell #322, despite that he requested to be held overnight in the healthcare unit or placed in a cell which did not have "issues." Plaintiff blames Defendant Quendo, asserting that Defendant knew that Plaintiff had undergone surgery and was susceptible to developing an infection. Plaintiff does not allege, however, that he developed an infection. Plaintiff requests money damages and a myriad of injunctive relief to remediate the allegedly unconstitutional conditions.

## ANALYSIS

Plaintiff's initial complaint, filed January 22, 2021, was dismissed at merit review with leave to replead as Plaintiff had pled inhumane conditions dating back to 2016. Plaintiff was informed that that the Illinois two-year statute of limitations precluded his asserting claims which occurred more than two years prior to date of filing. *Wilson v. Garcia*, 471 U.S. 261, 276, (1985); 735 ILCS 5/13-202. In his amended complaint, Plaintiff reasserts claims from 2016 to the present, claiming that the statute of limitations should be tolled as the complained-of conditions represent a continuing violation. Plaintiff cites *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) which provides that when a plaintiff is subjected to continuing harm, the plaintiff may recover for all of the harm, even if some of the events occurred outside of the statute of limitations.

In determining the applicable applicability of the statute of limitations, the Court must apply federal law to determine when the claim accrued, as the statute of limitations will begin

running as of that date. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Brown v. Dart*, No. 15-11835, 2016 WL 6948382, at *3 (N.D. Ill. Nov. 28, 2016), *aff'd,* 876 F.3d 939 (7th Cir. 2017). "Although Illinois state law is borrowed and sets the limitations period for the Section 1983 claims, federal law governs the date of accrual." *Id*. at *3 (internal citations omitted).

A cause of action typically accrues when "the wrong that injures the plaintiff occurs." *Brown*, 2016 WL 6948382, at *3. *See Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) (quoting *Wallace*, 549 U.S. at 388) (a personal injury action "accrues when 'the plaintiff has a complete and present cause of action' - in other words, when the plaintiff 'can file suit and obtain relief.'" *See also, CBS Outdoor, Inc. v. Vill. of Plainfield, Ill.*, 959 F. Supp. 2d 1054, 1061–62 (N.D. Ill. 2013) ("[a] Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated.") (Internal citation omitted).

Inhumane conditions of confinement will represent a continuing violation if it would be unreasonable to require a plaintiff to file suit each time he was subjected to the adverse conditions. *Perales v. County of Lasalle*, No. 15-10110, 2016 WL 3014815, at *3–4 (N.D. Ill. May 26, 2016). "The Seventh Circuit has recognized that a continuing violation is a claim where, among other things, 'the state actor has a policy or practice that brings with it a fresh violation each day.'" *Loza v. Josephson*, No. 16-8111, 2018 WL 4095097, at *3 (N.D. Ill. Aug. 28, 2018) (citing *Savory v. Lyons*, 469 F.3d 667, 672-73 (7th Cir. 2006)). Plaintiff has adequately pled a continuing violation as to the soot-like condition of the water, the black mold, and insect infestation, where he has alleged that it continued from 2016 through the present day.

Plaintiff may not, however, assert claims as to the water, black mold, and insect infestation against former Warden Melvin as he is barred from doing so under the Illinois statute of limitations. This is so, as Plaintiff pleads that Defendant left Pontiac in 2017 or 2018 while the

4

complaint was not filed until 2021. *See Brown v. Godinz*, No. 15-522, 2017 WL 2868951, at *4 (N.D. Ill. July 5, 2017). A plaintiff "can delay the start of the limitations period only for as long as the defendant[ ] had the power to do something about [the plaintiff's] condition. Thus, for a § 1983 claim alleging deliberate indifference to prison conditions, the limitations period begins to run when either the plaintiff or the defendant leaves the prison, because, at that time, the defendant loses "power to do something" about the plaintiff's conditions of incarceration." (Internal citations omitted). This claim will proceed as to Defendant Wardens Kennedy and Jackson.

Plaintiff asserts that on unidentified dates, he complained of the conditions to Defendants Blackard, Shelton, Prentice and Lionhart. Plaintiff does not plead, however, that the Defendant officers had the authority to remediate the conditions. *See McGill v. Duckworth*, 944 F.2d 344, 348–49 (7th Cir. 1991) (plaintiffs may not "tax employees of the prison system with the effects of circumstances beyond their control.") While Plaintiff made the request that Defendant Brown move him to a different cell, he asserts that this request was denied by command staff, not by Defendant Brown. Defendants Blackard, Shelton, Prentice and Brown are DISMISSED. Plaintiffs may proceed on the claim that Defendant Lionhart refused to provide him cleaning supplies while he was housed in segregation cell #322.

Plaintiff asserts against Defendant's Gargan, McDowell and Quendo, that they delayed his referral to the healthcare unit, believing that his claim to have a bug in his ear did not constitute an emergency. This allegation appears to be one for deliberate indifference to a serious medical need and is misjoined with the underlying conditions of confinement claim. *See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants

belong in different suits." In other words, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." The same applies to Plaintiff's claim that Defendant Quendo placed him back in the cell after surgery, "knowing" that he was susceptible to infection; and that Plaintiff was prescribed antibiotics which did not work when he reported to the healthcare unit with a sore throat, breathing difficulty and vomiting.

In addition, Plaintiff appears to name "staff" in addition to Defendant Lionhart who allegedly failed to provide him adequate cleaning supplies. He does not, however, identify these individuals by name or description or indicate the dates on which these requests were made. Plaintiff does not provide sufficient detail by which these individuals might be identified, and they are DISMISSED.

**IT IS THEREFORE ORDERED:**

1.      This case shall proceed solely on the condition of confinement asserted against Defendants Kennedy, Jackson, and Lionhart. All other claims will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. Defendants Melvin, Blackard, Brown, McDowell, Prentice, Shelton, Gargan and Quendo, are DISMISSED.

2.      Plaintiff's motions for status [12], [13] and [14] our rendered MOOT by this order.

3.       The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

4.      If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that

Defendant and will require that Defendant pay the full costs of formal service pursuant to

Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided

by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall

provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding

address. This information will be used only for purposes of effecting service. Documentation of

forwarding addresses will be maintained only by the Clerk and shall not be maintained in the

public docket nor disclosed by the Clerk.

5.      Defendants shall file an answer within the prescribed by Local Rule. A Motion to

Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal

Rules. The answer and subsequent pleadings are to address the issues and claims identified in

this Order.

6.      Plaintiff shall serve upon any Defendant who has been served, but who is not

represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the

Court and shall also file a certificate of service stating the date on which the copy was mailed.

Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk

or that fails to include a required certificate of service will be stricken by the Court.

7.      Once counsel has appeared for a Defendant, Plaintiff need not send copies of

filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's

document electronically and send notice of electronic filing to defense counsel. The notice of

electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic

service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8.      Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's

place of confinement. Counsel for Defendants shall arrange the time for the depositions.

9.      Plaintiff shall immediately notice the Court of any change in mailing address or phone number.  The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES;

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES; AND,

3) ENTER THE STANDARD QUALIFIED PROTECTIVE ORDER PURSUANT TO THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED this 2nd day of November, 2021.

_____s/Joe Billy McDade_____
JOE BILLY McDADE
UNITED STATES DISTRICT JUDGE